UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALISSA G. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:13-cv-00945-RLY-DKL |
| CAROLYN W. COLVIN Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Alissa G. Smith ("Smith") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying Smith's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability benefits. The Honorable Richard L. Young, District Judge, designated this Magistrate Judge, under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), to issue a report and recommendation on the request. [Dkt. 30.] For the reasons set forth below, the undersigned recommends the Commissioner=s decision be **AFFIRMED**.

**I.    BACKGROUND**

**A. Procedural History**

Smith filed applications for DIB and SSI on September 22, 2009, alleging an onset of disability of November 22, 2005. [Dkt. 13-2 at 13.] Smith's application was denied

initially on July 29, 2010, and upon reconsideration on November 16, 2010. *Id.* Smith requested a hearing, which was on January 3, 2012, before Administrative Law Judge Stephen E. Davis ("ALJ"). The ALJ denied Smith's application on March 14, 2012. [Dkt. 13-2 at 10.] The Appeals Council denied Smith's request for review of the ALJ's decision on April 17, 2013, making the ALJ's decision final for purposes of judicial review. [Dkt. 13-2 at 2.] Smith filed her Complaint with this Court on June 12, 2013. [Dkt. 1.]

**B. Factual Background and Medical History**

Smith was born on July 24, 1967 and was 38 years old at the time of the alleged onset of disability. She has past relevant work as a cake decorator, hotel housekeeper, child care provider and warehouse order taker. She testified that she has not worked since 2007 and that she stopped working because she was in too much pain.

Smith initially alleged multiple physical and mental impairments including fibromyalgia, osteoarthritis of the knees, obesity, bipolar disorder, borderline intellectual functioning and carpal tunnel syndrome. Smith confines her request for review of the Commissioner's decision to her alleged mental impairments and contends the ALJ erred in his analysis of Listing 12.04 (Affective Disorders). Accordingly, the Court will confine its analysis of the ALJ's decision to the portions relevant to this Listing. As both Smith and the ALJ thoroughly summarized the medical records, which totaled more than 500 pages, the Court declines to repeat the recitation of facts.

## II. LEGAL STANDARDS

### A. Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> Step One: Is the claimant currently employed;
>
> Step Two: Does the claimant have a severe impairment or combination of impairments;
>
> Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;
>
> Step Four: Can the claimant perform his past relevant work; and
>
> Step Five: Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520. *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity. 20 C.F.R. § 404.1560 (c)(2).

**B. Standard for Judicial Review**

An ALJ's decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

## III. DISCUSSION

Smith claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Smith asserts the ALJ erred when he: (1) determined Smith's combined mental impairments did not meet the criteria for Listing 12.04; (2) failed to summon a medical advisor to determine whether Smith's combined mental impairments medically equaled a Listing; (3) negatively assessed Smith's credibility; and (4) failed to adequately account for Smith's mental impairments at Step Five.

### A. Listing 12.04 (Affective Disorders)

Smith first argues the ALJ's denial decision was in error because "substantial psychiatric and psychological examination and treatment evidence" established her combined impairments met or medically equaled Listing 12.04. Specifically, Smith asserts the ALJ erroneously concluded Smith did not meet the Paragraph B criteria for the Listing. The Paragraph B criteria require the presence of at least two of the following for a claimant to be considered disabled: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Larson v. Astrue,* 615 F.3d 744, 748 (7th Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.04(B)). Thus, satisfaction of the Paragraph B criteria requires that Smith's mental impairments cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of

decompensation. *See* 20 C.F.R. § 404.1520a(c)(4) (rating the degree of limitation in this functional area on a five-point scale: none, mild, moderate, marked, and extreme).

The ALJ found Smith had only mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence and pace. Smith disagrees, and repeatedly asserts that the ALJ "cited the exhibit but ignored the findings" when making his determination. This is a difficult argument for the Court to interpret. The ALJ in this case did an unusually thorough job evaluating a large number of medical records. In fact, the analysis of Smith's impairments spanned more than eleven pages of the ALJ's opinion. Smith agrees the ALJ cited to the relevant exhibits, but because she disagrees with the ALJ's conclusion she apparently believes the ALJ must have ignored the very exhibits he cited in his opinion. There is no basis for this belief. The ALJ noted records that indicated Smith was "cooperative, made good eye contact and was verbal" as well as evidence that she is able to care for herself, cares for her goddaughter on occasion and walks 30 minutes a day. He concluded that while Smith has some limitations in the Paragraph B criteria, they do not rise to the level of "marked limitations." Smith has pointed to no evidence the ALJ failed to consider and offers no explanation as to why her mental impairments meet or equal the severity required under Paragraph B.

The Court likewise rejects Smith's argument that the ALJ erroneously disregarded her low GAF scores. It is often noted that GAF scores "are useful for planning treatment" but they do not "reflect the clinician's opinion of functional capacity." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). As the Seventh Circuit has

noted, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Smith asserts the ALJ failed to consider her GAF scores of 35, 45 and 50 as evidence of total disability. Yet the ALJ did cite her GAF assessments, and also cited evidence Smith declines to mention including that the GAF scores of 35 and 45 were assessed during a hospitalization in 2008 following a four-day cocaine and alcohol binge. Based upon the medical record as a whole, the ALJ found Smith's mental impairments did not rise to the level of severity required to be considered "disabled" under Listing 12.04. The Court finds there is substantial evidence to support that conclusion.

### B. Medical Advisor

Smith next asserts the ALJ was required to summon a medical advisor to testify as to whether her mental impairments met Listing 12.04. She further argues that the ALJ should not have relied upon the opinions of the state agency physicians because there was more recent evidence in the record. The Court disagrees with both of Smith's assertions.

An ALJ is not required to elicit testimony from a medical expert in every case. The ALJ has the duty to develop a full and fair record, which may involve consulting a medical advisor in situations involving incomplete medical histories. *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999). However, the ALJ in this case had an extensive medical history before him. With sufficient information to make a

disability determination, the ALJ was not required to seek testimony from a medical expert.

Smith further asserts that had the state agency physicians reviewed two subsequent medical records, they would have determined her to be disabled. This is nothing more than speculation on Smith's part. Furthermore, Smith fails to articulate why consideration of those records would have impacted the disability determination. The records cited by Smith are treatment notes following two visits to Midtown Community Mental Health Center on December 22, 2010 and January 6, 2010 that each note a diagnosis of bipolar disorder. However, the Court fails to see and Smith fails to articulate how these records establish she is totally disabled. In fact, despite more than 500 pages of medical records, no medical professional concluded that Smith is unable to work. The Court does not find persuasive Smith's speculative and underdeveloped argument that these two documents somehow compel a finding of disability. The record substantially supports the ALJ's determination that Smith did not meet or medically equal Listing 12.04.

### A. Smith's Credibility

Smith also contends the ALJ's negative credibility determination must be reversed because it is contrary to SSR 96-7p. The Court disagrees. In assessing a claimant's credibility when the allegedly disabling symptoms, such as pain, are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence. *See* SSR 96–7p, 1996 WL 374186, at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007). If not, SSR 96–7p requires the ALJ to

"consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila,* 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)). An ALJ's credibility determination may be overturned only if it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Smith asserts the ALJ erroneously rejected "psychiatric and psychological evaluations cited above" which proved Smith's allegations of total disability. Yet, as the Court has addressed, the ALJ provided an extensive analysis of the medical record and Smith points to no record in particular that has been overlooked. The ALJ also noted his reasoning for discounting Smith's credibility several times in his opinion. For example, he notes that "evidence in the record shows that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged. . . " [Dkt. 13-2 at 31.] The ALJ also notes that Smith "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." *Id.*

In addition, contrary to Smith's assertion, the use of boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies her credibility determination. *Pepper*, 712 F.3d at 367-

68 (7th Cir. 2013). Here, in addition to the above, the ALJ also noted that the state agency psychiatric consultants concluded Smith's mental impairments did not preclude her from working, and this conclusion was supported by the medical record as a whole. Based upon the analysis by the ALJ, the Court finds that his determination to not credit Smith's testimony of total disability is supported by substantial evidence.

### C. Step Five and RFC

Smith's final argument for the reversal of the ALJ's decision challenges the ALJ's determination of his Residual Functional Capacity ("RFC"). Specifically, Smith asserts the ALJ failed to consider the impact of her "major depression" and "GAF assessments in the totally disabled range" on her ability to work. [Dkt. 21 at 29.] A review of the ALJ's opinion, however, shows this argument is without merit. The ALJ noted that the state agency physicians found Smith was able to perform unskilled to semi-skilled tasks, yet the ALJ still limited Smith to unskilled work in the RFC in light of additional evidence in the medical record received after the agency physicians rendered their opinions. Additionally, Smith's reliance on the GAF assessments is misplaced. As discussed above, GAF scores, without additional support, do not indicate disability. The scores upon which Smith relies are without support in the record therefore reasonably not relied upon by the ALJ. The Court concludes the ALJ's RFC is supported by substantial evidence and does not require remand.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Smith does not qualify for disability benefits, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

### Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

*v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses. No replies will be allowed.**

**DONE this date**: 06/17/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov